9274

## WHITE v. BARBERRY.

(88 S. E. 132.)

HOMESTEAD. CROPS. EXEMPTIONS. APPEAL AND ERROR.

1. APPEAL AND ERROR.—Findings of fact by a magistrate, concurred in by the Circuit Judge in a law case sustained on appeal.
2. HOMESTEAD.—Where an obligation is contracted in purchasing goods used in the production of crops raised by the purchaser on particular lands, such crops are not exempt from levy to enforce payment thereof, and the vendor need not trace the use of the goods to the particular portion of the crop levied upon.

Before SMITH, J., Laurens, September, 1915. Affirmed.

Action by W. C. White against C. B. Barbery. The facts are stated in the Circuit decree, as follows.:

This case came on to be heard before me on appeal by defendant from the judgment rendered against him by the magistrate in favor of the plaintiff for $100.00 and costs. The defendant's petition for a peremptory writ of mandamus to P. K. Abercrombie, special constable, to set off to defendant a homestead in certain crops grown by him on lands in Laurens county, which he had rented from the plaintiff during the year 1914, the rule to show cause theretofore, by Judge Frank B. Gary and the constable's return, was by agreement argued and submitted to the Court at the same time. The principal case and the special proceedings, both involve a consideration of the same facts, and substantially the same questions of law are raised. The facts shown by the record briefly stated are as follows: That the defendant, Barbery, during the year 1914, rented a farm in Laurens county from the plaintiff, W. C. White. The defendant cultivated this farm, and among other crops, raised thereon a quantity of corn and fodder, which was on

FOOTNOTE.—Crops liable to levy to enforce payment of obligations incurred in their production. See *Farmer* v. *Greer Fertilizer Co.,* 102 S. C. 284, 86 S. E. 639.

hand when this action was commenced.   On the 1st day of
May, 1914, the defendant executed his note for $146.15,
payable to the order of the Independent Guano Company,
on the 1st day of November, 1914.   The plaintiff, W. C.
White, signed this note with the defendant, Barbery.   The
consideration of the note was commercial fertilizer delivered
to the defendant.   It was used by him on the land which he
had rented from the plaintiff in the production of the crops
grown thereon that year.   When the note matured the
defendant, Barbery, was unable or failed to pay it.   The
plaintiff, White, paid the guano company the amount due on
the note, and had it assigned to himself.   The assignment
was without recourse.   On the 1st of April, 1915, the plain-
tiff commenced this action in the Court of magistrate, P. P.
Traynham, at Laurens.   The plaintiff asked for only one
hundred dollars in full satisfaction of the note.   The plain-
tiff's complaint was in writing.   The defendant answered
orally.   The defendant admitted the purchase of the guano
for the sum of one hundred and forty-six and 15-100 dol-
lars, and the execution of his note.   He contended that it
was bought upon the strength of his credit alone, and that
the plaintiff signed this note, either as endorser or joint
maker, but in so doing without the request of the defend-
ant, and not for his accommodation or benefit, and, there-
fore, the defendant denied liability to the plaintiff.   He fur-
ther claimed that only a portion of his crops for the year
1914, which he made on the land rented of White, was pro-
duced by the aid of said fertilizers, and that no portion of
his crops that he then had on hand was in any way respon-
sible for the purchase of the said guano.   The case was tried
by the magistrate without a jury on the 17th of May, 1915.
The judgment was rendered in favor of White for the full
amount sued for and costs.   Execution was thereupon
issued to one P. K. Abercrombie, as special constable.   The
magistrate endorsed on the execution a statement to the
effect that the judgment and the execution were predicated

upon a debt or obligation contracted by the defendant in the production of his crops grown and raised on the lands rented from White for the year 1914, and for no other purpose. The language of this endorsement does not appear in the record. It is admitted, however, to be in substance as stated. One of the chief contentions of the defendant, or one of his main defenses on the trial of the case before the magistrate, and also, before me, was that only a portion of his crops, which were grown on the land rented, was produced by the aid of the fertilizer for which the note sued on was given, and that no portion of the crop then on hand was in anywise responsible for the purchase price. It appears that several witnesses were examined for both plaintiff and defendant. The magistrate, in his return to this Court, states that the only important conflict in the testimony was as to the original contract of sale. He found that the guano was sold to the tenant only after White, the landlord, had agreed with the agent of the guano company to become liable for it, or as it is sometimes expressed, "To stand good for it." It appears that the land rented from White was the only land cultivated by Barbery in 1914. The only crops produced by him were grown on these lands. All of the fertilizer procured from the guano company was used in the production of the crops grown on this land. The respondent, Abercrombie, pursuant to the directions of the magistrate, levied on 60 bushels of corn and 100 bundles of fodder, which, it is admitted, was a portion of the defendant's crop of 1914, produced on White's land. Abercrombie proceeded to advertise this property for sale at Barbery's house, in Laurens county. The defendant served notice on the constable demanding that his homestead be set off and his appraiser was appointed. It is admitted that Barbery is the head of a family and a resident of the State. The constable refused to set off homestead, and announced his intention to proceed with the sale. Thereupon the defendant filed his petition and presented the same to Judge

Frank B. Gary, at chambers, who issued an order directing the constable to show cause before this Court at Laurens why a peremptory writ of mandamus should not issue to the Court directing him to set off homestead, and in the meantime enjoining and restraining him from proceeding with the sale. Within five days from the rendition of judgment by the magistrate the defendant appealed to this Court upon three exceptions, or grounds of appeal, which were properly served. The defendant, however, did not give bond with surety to pay the amount of the judgment and costs in the event he should fail to sustain his appeal. The appeal, therefore, did not act as a stay or supersedeas. Code Civ. Proc., sec. 397.

The defendant's grounds of appeal are three in number. The first exception charges that the magistrate erred in finding that the plaintiff made agricultural advances by way of fertilizer to the defendant for the year 1914, and in holding that the plaintiff had an agricultural lien on the defendant's crops for that year for the alleged advances of fertilizers, and that he should have held that the plaintiff was only a surety for the defendant on the note to the Independent Guano Company, and that the fertilizers purchased from said company were not used in the production of the defendant's corn and fodder crops. It is admitted that the note sued on was given for the fertilizers, and that the fertilizers were used on the only lands cultivated by defendant during the year 1914, and that this was the land that he rented from White, and that the corn and fodder was a part of the crops raised on that land. There is no question but what fertilizers are to be considered as agricultural supplies or advances. The agent of the company who sold the fertilizers testified that the sale was made on the strength of White's credit. The magistrate so found. Even if that were not the fact, the note would be an obligation contracted in the production of defendant's crops. The plaintiff was compelled to, and did take up the note at

maturity, and became the owner thereof. The transaction shows that the plaintiff really furnished agricultural advances, and that, therefore, the obligation was contracted for that purpose, but if it should be held that this transaction was not the same thing as furnishing advances, still the plaintiff became the owner of an obligation which was contracted in the purchase of agricultural advances from the fertilizer company. The result is the same. It does not appear that the magistrate anywhere held that White had a landlord's lien on the defendant's crops. Certainly, this action is not a proceeding to enforce a landlord's lien under the statute. So much of this exception as raises this question must have been taken under a misapprehension. The suggestion that White was a surety for Barbery, and, therefore, not entitled to enforce this obligation against any of defendant's crops, is not tenable. The fact that he was surety, or endorser, or joint maker, as the case may be, does not affect this question. If he was merely a surety and was compelled to pay the debt of his principal, and, therefore, became the owner of the obligation, he would certainly be subrogated to all the rights and remedies of the creditor of his principal—in this case the guano company—but as matter of fact, he became the owner of the obligation by written assignment. As such owner he brought this action to enforce it to the extent of one hundred dollars. Being an obligation contracted in the production of defendant's crop grown on the only lands he cultivated in 1914, it was clearly enforceable against his crops. This exception must, therefore, be overruled. What has been said in connection with this first exception, also disposes of the third exception or ground of appeal, and this exception is, therefore, overruled. The important question in this case is raised by the second exception. This is the principal proposition that was most seriously argued. It is also the basis of the defendant's petition for the writ of mandamus. The contention is that it was error for the magistrate to endorse

on the execution issued to enforce the judgment against the defendant a statement to the effect that the said judgment and execution were based upon a debt or obligation contracted for money or advances to be expended or used in the production of defendant's crops for the year 1914, and that the advances or fertilizers which were the consideration of the note sued on were used under the defendant's cotton crops, and that no part thereof was used in the production of his corn and fodder then on hand, and that, therefore, his corn and fodder crops was exempt from levy, attachment and sale, by reason of the provisions of the Constitution and statutes relating to homesteads, the defendant being the head of a family and resident in the State, and not possessed of five hundred dollars' worth of personal property, including the corn and fodder in question. This proposition, together with the refusal of the constable to set in motion the necessary proceedings for the assignment of the homestead to the defendant in the corn and fodder, and the fact that he was proceeding to sell the same under the execution and pursuant to the levy made is, as above stated, the basis of the application for the writ of mandamus. There is no reason, therefore, why both this ground of appeal and application for the writ should not be considered together. However, upon the argument, it was urged that the defendant was not entitled to the writ of mandamus, because he was possessed of an adequate remedy at law, that the magistrate had decided his right to a homestead in the corn and fodder, and that the decision was against the defendant and that appeal was the only way to review that decision and not by application for mandamus. It is certainly true that mandamus will not lie where there is an adequate remedy at law, by appeal. 26 Cyc. 173; *State* v. *Hiers,* 51 S. C. 388, 29 S. E. 89; *Ex parte McKay,* 15 S. C. 322; *State* v. *Mitchell,* 7 S. C. L. (2 Treadway) 703. Where there is an appeal pending involving the same questions the writ will not be issued. 26 Cyc. 185. To obtain

the writ there must be a clear legal duty.  26 Cyc. 162.
While, strictly speaking, the writ will not lie, I have thought
it best to consider the application therefor upon its merits,
and as above stated, in connection with the second ground
of appeal.

Sec. 3718 of the Civil Code of 1912, vol. I, is one of
the sections of the chapter relating to homesteads, and pro-
vides as follows: "The yearly products of said homestead
shall be subject to attachment, levy and sale to secure or
enforce the payment of obligations contracted for provi-
sions or other necessary articles purchased or advanced in
money, or merchandise procured to be used or expended in
the production of the same, or other obligations contracted
in the production of the same, and of none other; but the
Court issuing the process therefor shall certify thereon that
the same is issued for the said purpose and no other."  And
the Constitution of South Carolina, art. III, sec. 8, contains
the following proviso: "That the yearly products of said
homestead shall not be exempt from attachment, levy and
sale for the payment of obligations contracted in the produc-
tion of the same."  The language of the Constitution and
statute here quoted is very plain.  The meaning is per-
fectly clear.  The note sued on is undoubtedly such an
obligation as these provisions contemplate.  It was given or
contracted in the production of defendant's crops raised by
him during 1914.  These constitute the yearly products of
his homestead.  Certainly fertilizer is ordinarily consid-
ered as agricultural advances.  And fertilizer is "other
necessary articles purchased or advances in money or mer-
chandise procured to be used or expended."  In the lan-
guage of the statute above quoted, the note sued on is
within the clear meaning of this language.

It is argued that this cannot be true, because the only
crops that the defendant had on hand, and which the con-
stable had levied on, to wit, the 60 bushels of corn and the
100 bundles of fodder, and which the constable was about

to sell, were not raised by the aid of, or in consequence the use of, the fertilizers purchased from the guano company. This position simply means that the seller of agricultural advances, or of fertilizer, or the person who furnishes supplies or fertilizers to be used or expended in the making of a crop by the purchaser, must literally follow its actual use. In this connnection, it does not appear that the magistrate found the facts to be that the corn and fodder of the defendant on hand at the time of the trial were not produced by the aid of the fertilizer purchased from the guano company. There is no good reason why the magistrate should be reversed in this particular. However that may be, it is conceded that the fertilizer was used in the making of defendant's crops, and that the corn and fodder in question were a part of his crops. This contention requires a very narrow construction to be placed on the Constitution and statute above set forth. To adopt such a view and to permit its application to the facts of this case would render the above provisions of the law almost, if not entirely, worthless or meaningless. It would seem that to merely state the proposition manifests its weakness. It frequently happens that a farmer buys his fertilizer from a guano company and his other agricultural supplies or advances from a merchant, and gives his obligation therefor. Must the merchant follow the use of the supplies which he furnishes and literally know and ascertain definitely into what particular crop the same are used or expended? Certainly agricultural advances or supplies cannot actually be put under a crop. Must the fertilizer dealer trace the application of his guano and be able to show, if it is necessary for him to sue the purchaser on the note or obligation given the purchase money thereof, that it was used under cotton or oats or corn or produce, or something else? It sometimes happens that a farmer purchases part of his agricultural supplies or obtains a portion of his advances for making his crops from one merchant and another. In such case let us

assume that each merchant takes a written obligation for the purchase money. When the obligation matures it becomes necessary for each merchant to bring his action to enforce payment thereof. Under this view contended for, it would be easy for the farmer to say to his first merchant, "I have no crops on hand into which the supplies you furnished went." And just as easily could he say to the second merchant, "The crops that I have on hand were not made or produced by the use or aid of the advances I obtained from you. You must show that the consideration of the obligation you are suing me upon actually was used by me in the production of the particular crops that I have on hand at this time; otherwise you are not entitled to recover your money." In such case the purchaser would be able to say to the seller that his crops were not produced by the articles or advances which the merchant in question had furnished him. It would be very easy for a dishonest purchaser to take advantage of the seller. It would open the door of fraud. It would bring about an absurd situation. The view contended for, therefore, is not and cannot be a sound one. The logical conclusion, however, of such a view, carried, to its full extent, would produce the situation of something like, above stated. The contention cannot be sustained.

It is clear, therefore, that the note sued on in this case, having been given for fertilizers which were used in the production of the defendant's crops during 1914, it was proper and correct for the magistrate to order enforcement of the execution for the judgment rendered thereon against, or out of the crops of the defendant which he produced during the year. The judgment of the magistrate must be sustained. The defendant's exceptions must be overruled, and his application for writ of mandamus denied, and the temporary restraining order heretofore granted dissolved. It is so ordered.

The defendant appeals on the following exceptions:

1. Because his Honor erred in not reversing the magistrate in his finding of fact that the note sued on was an obligation contracted in the production of the defendant's crops, while he should have held that the 60 bushels of corn and the 100 bundles of fodder were grown by the defendant-appellant on bottom land on which none of the fertilizers were used.

2. His Honor erred in refusing to grant the writ of mandamus to compel the constable, P. K. Abercrombie, to proceed to set off to defendant-appellant his homestead exemption on the 50 bushels of corn and 100 bundles of fodder in the production of which none of the fertilizers were used.

3. His Honor erred in finding and holding that the note sued on in this case having been given for fertilizers which were used in the production of the defendant's crops during the year 1914, and that it was proper and correct for the magistrate to order enforcement of the execution for the judgment rendered thereon against or out of the crops of the defendant which he produced during said year, the error being that the property levied on was not produced by the use of any of the said fertilizers.

4. Because his Honor erred in holding that sec. 3718 of the Code of 1912 was constitutional and not in violation of art. III, sec. 28 of the Constitution 1895, in that the appellant owned no lands, the note sued on was not for the purchase money of the property levied on, nor for taxes, nor for repairs on the homestead, nor an obligation contracted in the production of the said crops.

*Messrs. W. B. Knight* and *F. P. McGowan,* for appellant, submit: *Civil Code, sec. 3718, conflicts with Const., art III, sec. 28; a leasehold estate is a mere chattel interest:* 2 Black. Com. 143. *The right of personal exemption cannot be decreased by statute:* 54 S. C. 82; 84 S. C. 405; 26 S. C. 227; 78 S. C. 405; 51 S. C. 101. *Certificate on exe-*

*cution not necessary in levy on personal property:* 32 S. C. 365; 30 S. C. 459; 11 S. C. 333, *and of no effect:* 15 S. C. 36; 18 S. C. 35. *Right to homestead may be determined in these proceedings:* 16 S. C. 1.

*Messrs. Dial & Todd* and *Jas. M. Richardson,* for respondent, submit: *Findings of fact not reviewable here:* 70 S. C. 180, 216, 555; 69 S. C. 522; 71 S. C. 412. *Construction of Civil Code 1912, sec. 3718:* 102 S. C. 285.

February 26, 1916.
The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

For the reasons therein stated, the judgment of the Circuit Court is affirmed.